**In re Marshall S. SWANN, a/k/a Stuart Swann, a/k/a M. Stuart Swann.**

**Bankruptcy No. 91–40802–PKE.**

United States Bankruptcy Court,
D. South Dakota, S.D.

Jan. 13, 1993.

James A. Craig, Craig & Nichols, P.C., Sioux Falls, SD, Chapter 7 Trustee.

Charles L. Nail, Jr., Sioux Falls, SD, Asst. U.S. Trustee.

Craig Peyton Gaumer, Sioux Falls, SD, Asst. U.S. Atty., for U.S. I.R.S.

Gregg S. Greenfield, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, SD, for Campbell Supply Co.

Scott M. Perrenoud, Fisher Swanson Hughes, Sioux Falls, SD, for First Interstate Bank.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

The matters before the Court are objections to the Chapter 7 Trustee's proposed scheme of final distribution. The distribution proposes to pay the two major secured creditors of the bankruptcy case and numerous 11 U.S.C. § 506(c) expenses. The Section 506(c) administrative expenses are not to be paid on a pro rata basis, however. Some of the Section 506(c) expenses were previously paid, and now the Trustee proposes to pay the remaining expenses either in full, in part, or not at all.

A tax obligation incurred by the estate is not identified on the proposed distribution report, but has been characterized by the Trustee as a Section 506(c) expense and is the only claim that will receive no distribution. The Trustee believes this treatment is justified since recovery of a Section 506(c) expense is limited to the extent of any benefit to the holder of such a claim, unless the creditor consents to pay the expense. The Trustee reasons that neither of the two secured creditors consented to pay the estate's tax liability, since payment would not provide a benefit to either party; therefore, no obligation exists to distribute on it.

The United States Trustee [hereinafter "U.S. Trustee"] believes the proposed distribution violates the distribution scheme set forth by 11 U.S.C. § 726(b), which would require a pro rata treatment for all the administrative expenses. The overall distribution scheme of Section 726 is equal treatment for equal claims. Violating that objective constitutes cause to deny the proposed distribution. In addition, the objection states the Trustee has mischaracterized the tax liability, as well as some other expenses, as Section 506(c) expenses when they are actually 11 U.S.C. § 503(b) admin-

istrative expenses. The Internal Revenue Service [hereinafter "I.R.S."] joins the U.S. Trustee's objection urging a fair distribution plan based on pro rata treatment of all administrative expenses.

In a separate but related dispute, the two secured creditors battle over the source of payment for the administrative expenses. The creditor with the superior lien position argues it is not required to absorb any Section 506(c) expense since an agreement was reached between the creditors and the Trustee which settled the disputed amount of its claim, but did not provide that this amount would be, or could be, subject to further reduction by administrative expenses. The other creditor argues that both creditors must share the administrative expenses since there was no explicit agreement that the agreed-upon claim amount would *not* be reduced by normal, routine Section 506(c) expenses.

There are several questions to consider. The first focuses on the interpretation of Section 506(c): what type of expenses are properly characterized within this provision, how they are determined, and how they correlate with the distribution provisions of Section 726. The Court must then determine the manner of allocation, if any, of Section 506(c) expenses between the two secured creditors and determine whether the tax liability incurred by the estate is properly characterized as a Section 506(c) expense or as a Section 503(b) administrative expense. Finally, the Court must determine whether the remaining sale proceeds are subject to the distribution requirements provided by Section 726. These are core proceedings under 28 U.S.C. § 157(b)(2), and this ruling shall constitute Findings of Fact and Conclusions of Law required by Fed.R.Bankr.P. 7052.

## FACTUAL & PROCEDURAL BACKGROUND

Early in this bankruptcy proceeding, the liquidating Chapter 7 Trustee, James A. Craig [hereinafter "Trustee"], filed a Complaint to Sell Property of the Estate Free and Clear of Liens and Interests. The action proposed to sell residential real proper-

ty and miscellaneous personalty subject to two mortgages and numerous mechanic's liens. A hearing was held on the Trustee's proposed action, at which time, the parties stipulated for entry of an order and judgment permitting the sale of the property free and clear of liens and interests, permitting interim disbursement of proceeds to cover the first mortgagee's claim, and permitting payment of various 11 U.S.C. § 506(c) expenses, including, but not limited to, the real estate broker's commission, pro rated real estate taxes, and other miscellaneous costs of closing. The judgment also ordered the remaining claimants to file statements of claims to facilitate the determination of rights in and to the remaining sale proceeds prior to trial. At a pre-trial conference, the Court heard a motion for summary judgment filed by the second mortgagee, First Interstate Bank. That issue concerned the extent, validity, and priority of the second mortgage in relation to the numerous mechanic's lien claimants. In its memorandum decision, the Court granted summary judgment, which caused First Interstate Bank, Campbell Supply Company, and the Chapter 7 Trustee to be the only remaining claimants interested in the distributive priority of sale proceeds. As to the remaining claimants, the Court determined the mechanic's lien position of Campbell Supply Company was superior to second mortgagee First Interstate Bank. *See In re Swann,* 141 B.R. 678 (Bankr. D.S.D.1992).

Following the Trustee's sale of the over-encumbered real property, the bankruptcy estate realized income, which, in turn, created a federal income tax liability. Following the requirements of 26 U.S.C. §§ 6012(a)(9) and 6151(a) of the Internal Revenue Code, the Trustee filed a Form 1041 U.S. Fiduciary Income Tax Return and reported the estate's tax liability of $6,743.00. This tax has never been paid.

The Trustee has now filed a Final Report and Account Before Distribution, which includes a statement of the final distribution

to be made pursuant to 11 U.S.C. § 726. The balance on hand, $16,649.67, consists entirely of proceeds from the real property sale. The Trustee proposes to distribute the entire sum toward the required payment of "liens, security interests, or other interests in property of the estate," a category that includes several unpaid 11 U.S.C. § 506(c) expenses, First Interstate Bank's mortgage, and Campbell Supply Company's mechanic's lien interest. There is no proposed distribution for the tax debt.

## POSITIONS AND ARGUMENTS

In opposition to the proposed distribution, Assistant United States Trustee Charles L. Nail, Jr. [hereinafter "U.S. Trustee"], filed an objection to the Final Report and Account Before Distribution and requested a hearing on the matter. The U.S. Trustee's interest concerns the distribution of funds, and the objection states the proposed distribution violates 11 U.S.C. § 726(b) inasmuch as the proposal does not provide a pro rata treatment for all allowed administrative expenses.[1] In short, the proposed distribution treats similarly situated administrative claims unequally. The U.S. Trustee also objects to the fact that the Trustee proposes no payment of any kind on the income tax incurred by the estate in connection with the sale. The tax is also an administrative expense.

The U.S. Trustee advocates Section 726 of the Bankruptcy Code as the governing provision concerning distribution procedures for Chapter 7 liquidation cases. Section 726(a)(1) requires estate property to be "distributed first, in payment of claims of the kind specified in, and in the order specified in, section 507." Section 726(b) states that payment on claims of the kind specified in Section 507(a)(1) must be made pro rata. In sum, administrative expenses have a first priority, and all administrative expenses have to share equally in any distribution. The Trustee's distribution, how-

---

1. The "Clerk of Court," "Trustee Fees," and "Trustee Expenses" are to be paid in full while the fee of "Craig & Nichols" (Trustee's counsel) is to be paid in part. Section 726(b) provides

that payment on Section 507 claims and unsecured claims "shall be made pro rata among claims of the kind specified."

ever, disregards Section 726 and attempts to "earmark" or differentiate the treatment of various Section 506(c) expenses. Basically, the Trustee is using Section 506(c) as a distribution provision, instead of a cost recovery provision.

The United States of America, acting by and through the I.R.S. and its counsel, Assistant United States Attorney Craig Peyton Gaumer, filed a joinder to the U.S. Trustee's objection. The I.R.S. cites *Holywell Corporation v. Smith*, — U.S. —, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992), for the proposition that if an entity has a duty to file an income tax return, then the entity also bears the responsibility for paying the income tax. In this case, the Trustee is the fiduciary acting on behalf of the estate, the entity that incurred the tax; therefore, the Trustee has a duty to make sure the income tax is paid, whether it is paid on a pro rata basis or paid in full, just so long as its treatment is on par with all other administrative claimants. The I.R.S. bolsters this argument by concluding that inasmuch as the Trustee should have abandoned this overencumbered real property rather than selling it, the Trustee should not be permitted to completely avoid the tax liability and could, in fact, be held personally responsible for it. Campbell Supply Company, represented by Sioux Falls Attorney Gregg S. Greenfield, objects to the U.S. Trustee's objection to the Trustee's proposed distribution by stating the I.R.S. has nothing more than an unsecured claim which cannot be paid from the secured creditors' collateral. Therefore, the Court should completely disallow any claim the I.R.S. makes against the sale proceeds.

As to the argument over the source of payment for administrative expenses, Campbell Supply Company states that it is an oversecured creditor and the Trustee is not entitled to surcharge its secured claim with *any* Section 506(c) administrative expenses. This contention is based on the fact that Campbell Supply Company agreed with First Interstate Bank and the Trustee that the amount of its secured claim would be $7,500. Campbell Supply Company believes that based upon this agreement, it must be paid the full amount of the stipulated claim and no less, because at no time did Campbell Supply Company consent to pay "these magical administrative expenses." In fact, Campbell Supply Company insists it would not have agreed to fix the claim at $7,500 had it known there would be, or could be, further reduction due to administrative expenses. Finally, since it is undisputed that Campbell Supply Company's lien position is superior to First Interstate Bank's claim, the administrative expenses should be "solely diminished" by First Interstate Bank's claim.

First Interstate Bank, represented by Sioux Falls Attorney Scott M. Perrenoud, filed a response stating that, as is, the Trustee's proposed distribution is consistent with the agreements it made with Campbell Supply Company and the Trustee.[2] In other words, both creditors should share the burden of paying Section 506(c) expenses. And even though First Interstate Bank and the Trustee agreed at the outset of the sale that the Trustee would cap the total Section 506(c) expenses at $3,855.87, it is only fair that Campbell Supply Company, who also benefited from the sale, should "pull its own weight and share the expense." First Interstate Bank believes both creditors benefited from the Trustee's sale, because, had it not been held, both creditors would have been left to the state court foreclosure proceeding pending at the time this case was filed, meaning proceedings and remedies available to junior creditors—in essence, nothing. Moreover, Section 506(c) administrative expenses assessed against secured

---

**2.** Prior to the sale, the Trustee assured First Interstate Bank that costs and expenses relating to the sale would be capped at $3,855.87. The proposed distribution shows that this amount has been assessed against the two creditors as follows:

$1,762.88 to be assessed against Campbell Supply Company's claim of $7,500,

and
$2,092.99 to be assessed against First Interstate Bank's claim of $9,225.03. First Interstate is also assessed an additional $75.36 for miscellaneous costs.

claims are routine, normal, and to be expected; therefore, Campbell Supply Company's "fixed claim amount" argument is diminished to a point of insignificance. The parties simply agreed that Campbell Supply Company's secured claim would be $7,500. That did not mean that the claim amount would not be subject to an appropriate portion of Section 506(c) expenses.

As to the I.R.S. tax debt, First Interstate Bank believes the Court should not sustain the U.S. Trustee's objection, because doing so would permit the I.R.S. to take more of a Section 506(c) claim from the secured creditors' collateral than was agreed to between First Interstate Bank and the Trustee—an agreement that was made in order to institute the sale. And as to the U.S. Trustee's allegation that the proposed distribution contradicts the "pro rata" design of Section 726(b), First Interstate Bank concludes:

> [A]dministrative claims are paid from any available unsecured assets remaining after satisfaction of secured creditors' claims. Therefore, even if all of the objections in the United States Trustee's Motion were granted by the Court, such rulings should not affect the distribution to the Bank, consistent with the Chapter 7 Trustee's Report.

In the response to the U.S. Trustee's objection, the Trustee makes four declarations concerning the circumstances at hand. First, all of the Section 506(c) expenses identified on the Final Report and Account Before Distribution are properly characterized as Section 506(c) expenses rather than Section 503(b) expenses, since they relate to the preservation and/or disposition of *"property securing an allowed claim."* Second, property of the estate, pursuant to Section 541(a), is not the same as "property subject to valid existing liens," inasmuch as Section 541(d) provides that property a debtor has legal title to, but without any equitable interest in, is not property of the estate "to the extent of any equitable interest in such property that the debtor does not hold." The Trustee's argument, apparently, is that because Debtor is not one of the remaining claimants with an interest in the sale proceeds to be distributed, the

proceeds are not to be considered property of the estate. Third, while it is true that an expense paid out of property of the estate is subject to the procedural safeguards of the Bankruptcy Code, including Section 726, an expense is not subject to the procedural safeguards of the Bankruptcy Code when an expense is paid out of *"property securing an allowed claim,"* as is the case here. Fourth, the Trustee indicates the two secured creditors consented to pay the Section 506(c) expenses identified by the proposed distribution, but did not consent to pay the estate's income tax liability. Therefore, it is not necessary to make a distribution on the tax debt.

The Trustee also filed a reply to the joinder filed by the I.R.S., claiming the joinder is "fundamentally" wrong because it reviews the Trustee's action, i.e., sale of the property versus abandoning the property, from the benefit of 20–20 hindsight. The reply is that a trustee is not able to determine if a proposed sale will generate enough proceeds to provide a dividend to the unsecured creditors, an achievement the I.R.S. calculates as the sole purpose of a Chapter 7 liquidation. Further, the Trustee says prudence requires the Trustee to "cover" the possibility that the sale will not generate sufficient funds by obtaining the consent of the secured creditors to pay the expenses under Section 506(c). If the Court were to adopt the Government's position in this case, there would be a chilling effect on the Trustee—and the Trustee would hesitate to take the risk of a sale—a sale that just might yield a dividend for unsecured creditors.

## ISSUES

1. Whether Section 506(c) expenses must be shared between two secured creditors when one creditor negotiates a settlement agreement as to the amount of its secured claim, an agreement that does not indicate the claim amount can be or will be reduced by administrative expenses, but, when both creditors benefit from the trustee's disposition of real property, a benefit quantified by the fact that there would have been no recovery to either creditor if

forced to resort to state court remedies available in connection with a state court foreclosure action pending at the time of filing.

2. Whether a federal tax liability incurred by a bankruptcy estate when the liquidating trustee sells overencumbered real property is an administrative expense pursuant to 11 U.S.C. § 503(b)(1), which receives priority status from 11 U.S.C. § 507(a)(1) and, accordingly, has a priority position under the distribution scheme of 11 U.S.C. § 726, or whether the tax liability is an 11 U.S.C. § 506(c) expense to be recovered out of property securing an allowed secured claim, but only to the extent of any benefit received by the holder of such claim, absent creditor consent.

3. Whether a Chapter 7 trustee's proposed scheme of final distribution may be approved when it will simply pay the two allowed secured claims and Section 506(c) expenses out of property that secured the allowed claims and has been reduced to money as sale proceeds, but when Section 506(c) expenses should be paid prior to distribution and when the requirements of 11 U.S.C. § 726 govern Chapter 7 distributions.

### 11 U.S.C. § 506(c)

■ It is well-settled law that administrative expenses and costs cannot be charged against secured collateral. *Matter of Saybrook MFG. Co., Inc.*, 130 B.R. 1013, 1021 (Bankr.M.D.Ga.1991). This "traditional" rule is based on the fact that the trustee acts on the authority of the court and for the interest of the general creditors, not on the authority of the secured creditors and for their particular interests. *Id.* There is an exception to the rule, however, and Section 506(c) is that exception. *Matter of Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982); *In re Staunton Industries, Inc.*, 74 B.R. 501, 504 (Bankr.E.D.Mich.1987).

■ This exception is a codification of the equitable principle that those with standing under Section 506(c) may surcharge lienholders with the "reasonable" costs and expenses of preserving or disposing of the property subject to the lien. 3 L. King, *Collier on Bankruptcy* ¶ 506.06, at

506–55 (15th ed. 1992). "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). Typical examples include appraisal fees, auctioneer fees, moving expenses, maintenance and repair costs, and advertising costs. *Id.*

■ Obviously, this provision is best described as a recovery provision. Section 506(c) costs and expenses are recovered for the benefit of the bankruptcy estate, they are not recovered as compensation for the trustee. 3 L. King, *Collier on Bankruptcy* ¶ 506.06, at 506–57. Section 506(c) costs that are recovered "have priority with respect to the proceeds of the subject collateral over postpetition interest, fees, costs and charges, as well as other amounts, owing to the holder of the secured claim." *Id.* at 506–56. The recovery is limited, however, to the extent the lienholder derives a benefit from the preservation or disposition that gave rise to the costs or expenses. *Matter of Great Northern Forest Products, Inc.*, 135 B.R. 46 (Bankr. W.D.Mich.1991). A three-part standard must be shown in order to prevail on a Section 506(c) action. The individual with standing to seek compensation under this section has the burden of proving that the costs, expenses, or services: 1) were reasonable; 2) were necessary; and 3) were of benefit to the secured creditor. *French Market Homestead, FSA v. P.C., Ltd.*, 929 F.2d 203, 204 (5th Cir.1991); *Matter of Trim–X, Inc.*, 695 F.2d at 299; *Bank of Honolulu v. Anderson*, 66 B.R. 97, 99 (Bankr.9th Cir.1986).

■ If the three elements cannot be shown, recovery may still be available provided the holder of the secured claim caused or consented to the expense. *Matter of Great Northern Forest Products, Inc.*, 135 B.R. at 62. The Court may treat a creditor's consent as "advance acknowledgement that certain of the costs and expenses incurred would benefit such holder." 3 L. King, *Collier on Bankruptcy*

¶ 506.06, at 506–56. Consent, however, should not be implied merely from a creditor's acquiescence, but courts do allow greater latitude with respect to allowing costs and expenses under Section 506(c) when consent has been given. *Id.*

■ In general, Section 506 of the Bankruptcy Code determines the extent of a creditor's secured status. In sum, Subsection (c) is one of the adjustments used to make that determination. Subsection (c) equitably adjusts or shifts the costs of preserving or disposing of a secured creditor's collateral from the bankruptcy estate to the secured party. *Fulcrum International, Ltd. v. Saybrook Manufacturing Co.*, 124 B.R. 141, 144–45 (Bankr.M.D.Ga.1991).

### 11 U.S.C. § 503(b)(2)

■ The Bankruptcy Code provides that, after notice and hearing, administrative expenses shall be allowed, including "any tax incurred by the estate, except a tax of a kind specified in section 507(a)(7)."[3] 11 U.S.C. § 503(b)(1)(B)(i). In other words, a tax will be considered an administrative expense "if it can be shown that the tax was incurred by the estate, and that the tax is not one of those taxes specified in Section 507(a)(7)." *Matter of Interco Inc.*, 143 B.R. 707, 710 (Bankr.E.D.Mo.1992); *In re Higgins*, 29 B.R. 196, 201 (Bankr. N.D.Iowa 1983). In general, taxes incurred during the administration of an estate share the first priority accorded to administrative expenses generally. *Matter of Interco Inc.*, 143 B.R. at 712; *In re First Truck Lines, Inc.*, 141 B.R. 621, 625 (Bankr.S.D.Ohio 1992); 3 L. King, *Collier on Bankruptcy* ¶ 503.04, at 503–32 (15th ed. 1992).

In *In re Duby*, 98 B.R. 126 (Bankr.D.R.I. 1989), the trustee petitioned the court for instructions regarding the payment of administrative expenses, and one of the key issues was whether the payment of a capital gains tax from the sale of the debtor's real estate would be considered an administrative expense pursuant to Section 503(b)(1)(B). Like this case, the trustee in *Duby* sold the debtor's real estate, paid off a first mortgage, and filed a fiduciary return for the capital gain realized from the sale.[4] *Id.* at 127. Looking at the legislative history of Section 503(b), the *Duby* court found it clear that "capital gains taxes are obligations incurred by the estate, and constitute administrative expenses, which have first priority status under Section 507(a)(1)." *Id.; In re Card*, 114 B.R. 226, 228 (Bankr.N.D.Cal.1990); *In re EMC Industries, Inc.*, 27 B.R. 696, 697 (Bankr. D.S.C.1983). The legislative history reveals: "Administrative expenses include taxes which the trustee incurs in administering the debtor's estate, including taxes on capital gains from sales of property by the trustee and taxes on income earned by the estate during the case." *Id., citing* S.Rep. No. 989, 95th Cong., 2d Sess. 66 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5852. The *Duby* court indicates it relied on the "sparse" case law addressing this issue and was persuaded by the resolution reached in *In re Lambdin*, 33 B.R. 11, 12 (Bankr.M.D.Tenn.1983): "[T]his type of postpetition tax is classified as an administrative expense under 11 U.S.C. § 503(b)(1)(B) and has a first priority in payment from property of the estate, along with all other administrative expenses, pursuant to 11 U.S.C. § 507(a)(1)."

■ Case law resolving the specific question of the characterization of capital gains tax is indeed sparse, but other courts considering different kinds of taxes ranging from sales and use taxes, tax penalties, and even taxes owed prior to Chapter 7 conversion, have also concluded the taxes are properly classified under Section 503(b)(1)(B) after considering the two-prong

---

3. Section 507(a)(7) gives a lower priority to taxes such as employment taxes and certain income taxes. Some courts have included taxes that were incurred prepetition but which, for some reason, became due and payable postpetition. *In re All Star Sports, Inc.*, 78 B.R. 281, 284 (Bankr.D.Nev.1987).

4. The trustee in *Duby* paid the I.R.S. tax and then sought to deduct the administrative expenses from the remaining sale of property. *Id.*

standard of this section: 1) whether or not the tax was *incurred* by the estate; and 2) whether the tax is a Section 507(a) tax. *In re First Truck Lines, Inc.*, 141 B.R. at 625–26; *In re All Star Sports, Inc.*, 78 B.R. 281, 284 (Bankr.D.Nev.1987); *In re EMC Industries, Inc.*, 27 B.R. at 697–98.

## 11 U.S.C. § 726

■ Proceeds from a trustee's sale of property are first used to extinguish any valid liens on the property, after which, the remaining proceeds will be distributed to satisfy claims against the estate in accordance with the provisions of Section 726. *In re Lambdin*, 33 B.R. at 13. Section 726 dictates the order of distribution of property of Chapter 7 bankruptcy estates.[5] S.Rep. No. 989, 95th Cong., 2d Sess. 96–97 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 383 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5882, 5883, 6339.

■ Pursuant to Section 726, distribution is accomplished by satisfying a hierarchy of allowed claims:

The first set of allowed claims listed in § 726(a)(1) requires payment of § 507(a) priority claims in the order specified therein. Section 507(a), in turn, establishes a six-tiered hierarchy of priority claims. Section 507(a) accords first priority to administrative expenses allowed under § 503(b), 11 U.S.C. § 507(a)(1), and sixth priority to government unsecured tax claims. To the extent of available assets in the estate, distribution is made on claims in each priority tier. Only if priority one claims are paid in full will any distribution be made on priority two claims and if a priority tier cannot be paid in full, distribution is made pro rata among creditors within such tier. If the estate has enough assets to pay in full all

§ 507(a) priority claims, distribution will be made pro rata among the general unsecured creditors. (citations omitted)

*In re Higgins*, 29 B.R. at 199; 3 L. King, *Collier on Bankruptcy* ¶ 726.02, at 726–4 (15th ed. 1992).

■ A fundamental policy of the Bankruptcy Code is equality of distribution, and Section 726(b) is a "congressional expression of this policy." *Matter of Great Northern Forest Products, Inc.*, 135 B.R. at 66. As such, if one claimant is meant to be preferred over another, the statute must be clear in stating that purpose, and no court should judicially create other priorities or subclasses within the classes set forth by Congress. *Id., citing Nathanson v. NLRB*, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952).

The issue of this case concerns administrative expenses granted priority treatment pursuant to Section 507(a)(1), meaning "administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28."[6] If there are not enough funds to completely satisfy all of the Section 507(a)(1) expenses, they are to be satisfied on a pro rata basis. 11 U.S.C. § 726(b); *In re Lambdin*, 33 B.R. at 13. If any administrative expense is not fully paid, it will most likely remain unsatisfied. *Id.*

## ANALYSIS

■ In this case, a sale of real property was conducted by the Chapter 7 Trustee. In advance and in connection with the sale, a couple of agreements were made. One agreement resolved the dispute concerning the amount of Campbell Supply Company's secured claim: $7,500. The other agreement put a ceiling on the amount of Section

---

5. In pertinent part, 11 U.S.C. § 726 provides:
    (a) Except as provided in section 510 of this title, property of the estate shall be distributed—
       (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;
       . . . .
    (b) Payment on claims of a kind specified in paragraph (1) . . . of section 507(a) of this title

... shall be made pro rata among claims of the kind specified in a particular paragraph. . . .
Section 510 concerns subordination of claims and does not apply here.

6. Chapter 123 of Title 28 is captioned, "Fees and Costs," and includes filing fees and other fees assessed by the bankruptcy clerk. *See* 28 U.S.C. § 1930.

506(c) costs and expenses the · Trustee would recover: $3,855.87. The Court believes both these "deals" were made to induce or at least facilitate the sale of real property.

The Court believes both secured creditors are responsible for the "capped" Section 506(c) expenses as identified by the Trustee and as allocated by the proposed distribution report. The Court is not impressed with the argument that agreeing to fix the dollar amount of a secured claim means the claim cannot be subject to and reduced by Section 506(c) costs. That would be contrary to the very nature and purpose of having such a provision. First Interstate Bank is persuasive in arguing both creditors obtained a quantifiable benefit due to the Trustee's disposition of the real property. It is doubtful the state court remedies available to junior creditors would have yielded a benefit to either of these creditors.

The Court also acknowledges that the U.S. Trustee objected to the Trustee's characterization of some of the expenses as "liens, security interests, or other interests in property of the estate"; however, there was no evidence or other showing to conclude that the enumerated expenses were not Section 506(c) expenses; therefore, the Court will allow them to be paid as proposed and allocated by the Trustee.

■ Like other courts, this Court reads the various provisions of the Bankruptcy Code as providing for payment of Section 506(c) costs and expenses of a sale out of the proceeds of the sale *before* distribution to the secured creditors. *Matter of Saybrook MFG. Co., Inc.*, 130 B.R. at 1018. *See In re Marino*, 794 F.2d 1367, 1370 (9th Cir.1986); *In re Wyckoff*, 52 B.R. 164, 168 (Bankr.W.D.Mich.1985); *In re Neu–Deli Corp.*, 19 B.R. 175, 176 (Bankr.S.D.Ala. 1982). Consistent with the recovery aspect of Section 506(c), recovery or payment of such costs and expenses is done for the benefit of the estate so that the pool of assets available at the time of distribution is enlarged due to the recovery. *In re Interstate Motor Freight System IMFS, Inc.*, 71 B.R. 741, 745 (Bankr.W.D.Mich.

1987). In this fashion, Section 506(c) expenses do not diminish or negatively affect the distribution provisions of Section 726. "When a surcharge is being assessed against the secured creditors, the amount is reducing the amount being paid to secured creditors and as such, the distribution objectives are not effected." *In re Scopetta–Senra Partnership III*, 129 B.R. 700, 702 (Bankr.S.D.Fla.1991). In this case, the U.S. Trustee was correct in objecting to the Trustee's attempt to use Section 506(c) as a distribution provision rather than a recovery provision.

■ As to the characterization of the I.R.S. tax claim, case law, legislative history, and the statute itself make it clear that the tax liability incurred by this estate due to the Trustee's sale of real property is not a Section 506(c) expense but, rather, an administrative expense pursuant to Section 503(b)(1)(B), and, thus, it is entitled to priority distribution under Section 726. It is also clear that the U.S. Trustee is correct in that Section 726 governs Chapter 7 liquidation distributions.

The Court is aware, however, that after Section 506(c) expenses and costs have been "recovered" by surcharging these two secured creditors, there will not be enough proceeds to completely satisfy the two secured claims; therefore, no proceeds will be available for distribution pursuant to Section 726. This means the I.R.S. tax claim will remain unsatisfied. And so while several of the objections and arguments of the U.S. Trustee are valid, they do not affect the manner in which these sale proceeds are to be ultimately distributed, and so the Trustee's distribution, as proposed, is approved.

## CONCLUSION

Section 506(c) costs and expenses must be shared by all secured creditors that have either consented to such costs and expenses or that have received a benefit from the acts of preserving or disposing of the secured property. 11 U.S.C. § 506(c). This provision is designed to permit one who has standing to assess such costs and expenses against the secured creditors on behalf of

and for the benefit of the bankruptcy estate. Recovery is to occur prior to distribution of any remaining proceeds or assets.

In this case, both secured creditors received a benefit from the Trustee's sale of overencumbered real property. The fact that one secured creditor resolved a dispute concerning the dollar amount of its claim does not alter the fact that it, too, must share in an appropriate amount of Section 506(c) costs and expenses. In this case, the Court concludes that the Section 506(c) items listed on the Trustee's proposed distribution report are appropriate and may be recovered.

A Chapter 7 scheme of final distribution must follow the requirements of 11 U.S.C. § 726. Based on this Code section, if payment to a class of claims in a particular priority tier is insufficient to completely satisfy all claims within that tier, then distribution must be made on a pro rata basis.

Last, the Court finds that a tax debt incurred by a bankruptcy estate due to the Trustee's sale of overencumbered property is properly characterized as a tax under 11 U.S.C. § 503(b)(1)(B) rather than as a cost or expense pursuant to Section 506(c).

Because these findings and conclusions do not alter the ultimate result of the Trustee's proposed scheme of distribution, it is approved. The Court shall enter an appropriate order.

ORDER APPROVING CHAPTER 7 TRUSTEE'S FINAL REPORT AND ACCOUNT BEFORE DISTRIBUTION

The above-entitled matter having come before this Court, the Honorable Peder K. Ecker, Bankruptcy Judge, presiding, on objections to the liquidating Chapter 7 Trustee's Final Report and Account Before Distribution; and in recognition of and in compliance with the Memorandum Decision regarding the objections entered this day, it is hereby

ORDERED that all 11 U.S.C. § 506(c) items identified by the Chapter 7 Trustee will be approved and recovered on behalf of this bankruptcy estate and will be allocated between the two secured creditors, First Interstate Bank and Campbell Supply Company, as proposed by the Chapter 7 Trustee. It is further

ORDERED that the Final Report and Account Before Distribution is approved, inasmuch as the Findings of Fact and Conclusions of Law made in this proceeding do not affect the outcome of the proposed scheme of distribution.