**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 24, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

In re:  GARY L. BRYAN, a/k/a Gary
L. Bryan, officer, director, shareholder
of G.L. Bryan Investments, Inc., a/k/a
Gary Bryan, officer, director,
shareholder of Fort Love Aviation
Services, Inc., officer, director,
shareholder of Second Story Ventures,
Inc., officer, director, shareholder of
Tepgarde, LLC, officer, director,
shareholder of Reflex Systems LLC,
officer, director, shareholder, of Home
Closings, LLC, officer, director,
shareholder of Goodrich Bryan
Investments, Inc., officer, director,
shareholder of Ft. Collins Tire & Auto
Services, Inc., officer, director,
shareholder of Unicomm Power
Sources, LLC, officer, director,
shareholder, of Check Processing
Resources, Inc.,

     Debtor,

------------------------------------------

M. STEPHEN PETERS,          Nos. 16-1172, 16-1213, 16-1214

   Plaintiff Counter Defendant -
   Appellee/Cross-Appellee/
   Cross-Appellant,

   v.

ARTHUR CLARK,

    Defendant Counterclaimant -
Appellant/Cross-Appellee/
Cross-Appellee.


JANEL K. BRYAN,

    Defendant Counterclaimant -
Appellee/Cross-Appellant/
Cross-Appellee.


AURORA LOAN SERVICES, LLC.

    Defendant - Appellee

and

SPECIALIZED LOAN SERVICING,
LLC. and VECTRA BANK
COLORADO, N.A.,

    Defendants.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
BANKRUPTCY APPELLATE PANEL
(NOS. 15-020-CO and 15-024-CO)**

---

David von Gunten, von Gunten Law LLC, Denver, Colorado, for Appellant Clark.

Aaron J. Conrady (David V. Wadsworth with him on the briefs) Sender Wasserman Wadsworth, Denver, Colorado, for Appellee Peters.

John G. Nelson, Law Office of John G. Nelson, Denver, Colorado, for Appellee Bryan.

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **MURPHY**, Circuit Judges.

_____

**TYMKOVICH**, Chief Judge.

_____

This appeal arises out of an adversary proceeding brought by the trustee of a Chapter 7 bankruptcy estate to determine how to divide the proceeds from the sale of the debtor's real property. Previous litigation has already established, among other things, the validity, priority, and extent of the various liens on the property. *Bryan v. Peters* (*In re Bryan*), 547 F. App'x 892 (10th Cir. 2013) (unpublished); *Peters v. Bryan* (*In re Bryan*), 495 F. App'x 884 (10th Cir. 2012) (unpublished). On remand from this court, the bankruptcy court divided the sale proceeds among the various parties. The bankruptcy court's ruling left two of the parties dissatisfied, and they appealed to the Bankruptcy Appellate Panel (BAP).

In a thorough opinion, the BAP affirmed the bankruptcy court order in all respects but one. *Peters v. Clark* (*In re Bryan*), Nos. CO-15-020 & CO-15-024, 2016 WL 1170810 (B.A.P. 10th Cir. Mar. 25, 2016). In particular, the BAP concluded the bankruptcy court correctly declined to apply the doctrine of marshaling in favor of a secured creditor, because the common debtor requirement imposed by Colorado law was not satisfied. The BAP also concluded the bankruptcy court did not err in determining the bankruptcy estate was entitled to retain the proceeds from the sale of the property subject to a home equity line of credit lien, or in determining the amount due under that lien. But the BAP

-3-

found the bankruptcy court erred under 11 U.S.C. § 506(c) by surcharging the secured collateral—and thereby reducing a secured creditor's share—for expenses incurred contesting the validity of that secured creditor's lien. This decision led to a three-party cross-appeal to this court, and we exercise jurisdiction pursuant to 28 U.S.C. § 158(d)(1).

"Although this is an appeal from a BAP decision, '[this court] review[s] only the [b]ankruptcy [c]ourt's decision.'" *Rebein v. Cornerstone Creek Partners, LLC* (*In re Expert South Tulsa, LLC*), 842 F.3d 1293, 1296 (10th Cir. 2016) (quoting *Alderete v. Educ. Credit Mgmt. Corp.* (*In re Alderete*), 412 F.3d 1200, 1204 (10th Cir. 2005)). "[This court] treat[s] the BAP as a subordinate appellate tribunal whose rulings may be persuasive but are not entitled to deference." *Id.* Furthermore, "[m]atters of law are reviewed de novo, and factual findings (which are made only by the bankruptcy court, not by the BAP) are reviewed for clear error." *Id.* (citing *Gullickson v. Brown* (*In re Brown*), 108 F.3d 1290, 1292 (10th Cir. 1997)).

We have conducted a complete and independent review, and with several caveats discussed below, affirm the BAP's judgment and formally adopt its opinion for the court. The BAP opinion is attached as an appendix.

First, we find we have jurisdiction over this appeal. Under 28 U.S.C. § 158(d), this court only has jurisdiction over final orders from the BAP. "The BAP's final decision is appealable when the BAP does not remand for 'significant

-4-

further proceedings.'" *Clark v. Zwanziger* (*In re Zwanziger*), 741 F.3d 74, 75 n.1 (10th Cir. 2014) (quoting *Farmers Home Admin. v. Buckner* (*In re Buckner*), 66 F.3d 263, 265 (10th Cir. 1995)). "'[M]ere ministerial computations involving little judicial discretion'—like simple arithmetic—are *not* 'significant further proceedings.'" *Id.* (quoting *In re Buckner*, 66 F.3d at 265). Here, the BAP remanded to the bankruptcy court to allocate costs into three conceptually and chronologically distinct categories, a task requiring little judicial discretion. This being the case, we conclude the BAP decision was a final order in the meaning of § 158(d), and that we therefore have jurisdiction to hear this appeal.

Second, we address specifically several arguments involving the BAP's methodology and interpretation:

(1) The trustee argues the BAP based its 11 U.S.C. § 506(c) holding on its own unsupported findings, which were contrary to the findings of the bankruptcy court. We disagree. The BAP properly reviewed de novo the bankruptcy court's application of the legal standard in § 506(c). BAP Op. at 16. The BAP's holding—expenses incurred contesting the validity of a secured creditor's lien cannot be said to provide a "benefit" to that secured creditor in the meaning of § 506(c)—is not based on a set of contrary factual conclusions. Rather, relying on the bankruptcy court's factual findings, the BAP conducted a careful legal analysis of the meaning of "benefit" in § 506(c). BAP Op. at 19–23. This

statutory interpretation—analyzing the text of the statute and the relevant case law—was nothing other than proper de novo review of a legal question.

(2) The trustee also argues the secured creditor failed to preserve the § 506(c) issue. This argument is belied by the trustee's own submissions to this court. The secured creditor filed a written objection before the bankruptcy court objecting to the surcharge because the expenses did not benefit him. Peters App., Vol. I at 153–56. The trustee even mentions that objection elsewhere in his brief. Peters Br. at 42 ("[The secured creditor] objected to the Affidavit of Attorneys Fees submitted by the Trustee . . . and the [c]ourt sustained the objection in part, reducing the fee request by approximately $10,000.").

(3) Next, the trustee argues the BAP erred by disregarding the bankruptcy court's finding that the trustee's statutory commission could have been included in the § 506(c) surcharge, even though it was not. The trustee opted not to include the commission in the surcharge to allow the secured creditor some recovery. Because the commission would have been more money than the costs incurred contesting the validity of the secured creditor's lien, argues the trustee, any error in the § 506(c) "benefit" analysis was harmless.

But this argument is unpersuasive. The trustee *chose* not to include his statutory commission in the surcharge. That choice was a litigation strategy that might have allowed the secured creditor some recovery. But that fact does not create a benefit where none exists. And the harmless-error doctrine, which the

-6-

trustee cites, does not apply here. It applies only where "preserved trial errors . . . do not affect the substantial rights of a complaining party." Harry T. Edwards & Linda A. Elliott, *Federal Standards of Review* 79 (2007); *see also* 28 U.S.C. § 2111 ("[T]he court shall give judgment . . . without regard to errors or defects which do not affect the substantial rights of the parties."). Here, a substantial right is at issue: the amount of money the secured creditor will receive.

(4) Finally, the BAP opinion resolves issues that have not been raised by the parties on appeal to this court. We therefore adopt the BAP's opinion on the surcharge issue only to the extent that it addresses the costs incurred contesting the validity of the secured creditor's lien, which the parties and the BAP refer to as the Lien Priority Adversary.

**APPENDIX**


[See attached PDF]

Nos. 16-1172, 16-1213, 16-1214, In re Bryan

**BRISCOE**, Circuit Judge, concurring in part and dissenting in part.

I join the majority opinion, except for its rejection of one issue raised by the trustee in his cross appeal. The trustee argues, and I agree, that the Bankruptcy Appellate Panel (BAP) erred by disregarding the bankruptcy court's acceptance of a proposal by the trustee to take the commission he earned pursuant to 11 U.S.C. § 326 from the estate, rather than including it as part of the 11 U.S.C. § 506(c) surcharge against the portion of the net sale proceeds subject to Arthur Clark's lien. In my view, the BAP overlooked this important fact in rendering its initial decision, and subsequently failed to give adequate consideration to it in denying the trustee's motion for rehearing. Taking this fact into account in light of the bankruptcy court's other findings and conclusions, and in light of the BAP's remand regarding the trustee's costs, I believe the only appropriate remedy is to authorize the bankruptcy court on remand to consider anew whether or not to include the trustee's statutory commission as part of the § 506(c) surcharge.

I

When the trustee commenced the lien priority adversary proceeding that is the subject of this appeal, he sought

> (a) a declaration as to the interests of all the parties in the Net Sale Proceeds and (b) in the event the [bankruptcy court] determined that . . . Clark held a valid lien against the bankruptcy estate's share of the Net Sale Proceeds, recovery of the estate's expenses and his statutory commission from the amounts subject to . . . Clark's lien pursuant to 11 U.S.C. § 506(c).

Bankruptcy Ct. Doc. 190 at 11 (Adversary Proceeding # 10-01189-JGR).

After conducting a trial on the matter, the bankruptcy court issued written findings of fact, conclusions of law, and an order regarding the validity, extent and priority of lien claims on the net sale proceeds. The bankruptcy court concluded that Clark possessed a "second priority lien against the bankruptcy estate's share of the Net Sale Proceeds." Id. at 13. The bankruptcy court also concluded, however, that the trustee was entitled under § 506(c) to recover against the bankruptcy estate's share of the net sale proceeds his undisputed "statutory commission in the amount of $45,850.00 pursuant to 11 U.S.C. § 326 and attorney's fees and costs in the approximate amount of $65,000." Id. at 17. In doing so, the bankruptcy court acknowledged that the trustee's "statutory commission and the fees and costs" would "exceed the bankruptcy estate's share of the Net Sale Proceeds," leaving nothing for Clark. Id. at 20. But the bankruptcy court concluded that the equities of the case justified that result. More specifically, the bankruptcy court cited Clark's years-long efforts "to obtain a windfall at the expense of the bankruptcy estate," and the resulting and "needless accrual of some $70,000 of interest" on the first priority lien against all of the net sale proceeds (the Aurora Deed of Trust). Id.

To Clark's good fortune and because of the trustee's proposal, however, Clark was not left with nothing. The trustee, who prior to trial had received on behalf of the bankruptcy estate a second priority lien (a home equity line of credit deed of trust) against Ms. Bryan's share of the net sale proceeds, "proposed relief that w[ould] ensure [that] Clark receive[d] some distribution on account of [his] Lien." Id. at 20. Specifically, the trustee "propose[d] that only the bankruptcy estate's attorney's fees and expenses be

2

recovered from the proceeds subject to . . . Clark['s lien] pursuant to . . . § 506(c)," and that his statutory commission be paid from the estate's recovery on the second priority lien. Id. The bankruptcy court accepted the trustee's proposal, but "note[d] that because . . . Clark in all likelihood would have incurred the same or greater fees had he come forward much earlier and sought to enforce his lien interest, any contrary result would amount to a windfall to . . . Clark at the direct expenses of the estate." Id.

II

In his appeal to the BAP, Clark brazenly challenged the entire § 506(c) surcharge. The BAP agreed with the bankruptcy court that all of the fees and costs incurred by the trustee were necessary and reasonable, and that Clark benefitted from the fees and costs incurred by the trustee in challenging the validity of the trust and in selling the property. As for the lien priority adversary proceedings, the BAP concluded that while they "provided a potential benefit to the class of general unsecured creditors," they did not "provide[] any benefit to the secured collateral or to Clark," whose lien the trustee contested. Aplt. App. at 170. Thus, the BAP concluded that the fees and costs incurred by the trustee in connection with the lien priority adversary proceeding "d[id] not fulfill the requirements of § 506(c)." Id. at 173. Ultimately, the BAP affirmed part of the § 506(c) surcharge, but reversed the bankruptcy court's decision awarding the trustee fees associated with the lien priority adversary proceeding totaling $43,795. Id. at 174 (BAP Opinion at 24). The BAP also "remand[ed] th[e] case to the bankruptcy court for the limited purpose of determining which [of $2,949.34 in] costs awarded by the bankruptcy

3

court" related to the lien priority adversary proceeding. Id. Any such costs, the BAP admonished, were not to be surcharged against the bankruptcy estate's share of the net sale proceeds. Id.

Notably, the BAP made no mention in its decision of the trustee's entitlement to a statutory commission or of the trustee's proposal, and the bankruptcy court's acceptance of that proposal, to take the commission from the estate rather than include it, as the bankruptcy court had originally intended, in the § 506(c) surcharge. This despite the fact that the trustee specifically pointed out this important case history in the brief he submitted to the BAP.

The trustee filed with the BAP a motion for rehearing, noting that the BAP's original decision "made no mention of the Trustee's proposal" and its impact on the case. Aple. Supp. App. at 192. The BAP summarily denied the trustee's motion, noting only that "[t]he Trustee did not challenge the bankruptcy court's treatment of the statutory [commission]." Id. at 196.

### III

I agree with the BAP and the majority that the fees and costs incurred by the trustee in the lien priority adversary proceeding did not benefit Clark and thus the trustee was not entitled to recover those fees and costs under § 506(c). But I disagree with the BAP and the majority that the trustee's proposal to take his statutory commission from the estate rather than include it in the § 506(c) surcharge, which was accepted and adopted by the bankruptcy court, was simply a "litigation strategy" that has no bearing on

4

the outcome of this case. Maj. Op. at 6.

Bankruptcy courts are of course bound by "what the Bankruptcy Code itself provides." Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 24 (2000). But within those statutory limitations, they are courts of equity. Id.; see Young v. United States, 535 U.S. 43, 50 (2002). And the bankruptcy court in this case made quite clear, having overseen the case for years, that the equities strongly disfavored Clark. Indeed, as noted, the bankruptcy court expressly stated in its order that an equitable solution would have been for Clark to receive nothing from the net sale proceeds. The only reason it did not order that result was because of the trustee's proposal to take his commission from the estate, rather than including it in the § 506(c) surcharge. And even in accepting the trustee's proposal, the bankruptcy court continued to express concern about Clark receiving a windfall at the expense of the estate.

All of which leads me to conclude that the proper resolution of this case is to remand to the bankruptcy court so that, along with completing the task assigned to it by the BAP (determining which of the trustee's costs were associated with the lien priority adversary proceeding), it may consider anew whether the trustee's statutory commission should be taken from the estate or included in the § 506(c) surcharge.

**APPENDIX**

FILED

U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

March 25, 2016

Blaine F. Bates
Clerk

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE GARY L. BRYAN, also known as Gary L Bryan; officer, director, shareholder of G.L. Bryan Investments, Inc.; also known as Gary Bryan; officer, director, shareholder of Fort Love Aviation Services, Inc.; officer, director, shareholder of Second Story Ventures, Inc.; officer, director, shareholder of Disconnect, Inc.; officer, director, shareholder of Tepgarde, LLC; officer, director, shareholder of Reflex Systems, LLC; officer, director, shareholder of Home Closings, LLC; officer, director, shareholder of Goodrich Bryan Investments, Inc.; officer, director, shareholder of Ft. Collins Tire & Auto Services, Inc.; officer, director, shareholder of Unicomm Power Sources, LLC; officer, director, shareholder of Check Processing Resources, Inc., <br><br>        Debtor. | BAP Nos. CO-15-020 & CO-15-024 |
| M. STEPHEN PETERS, Trustee, <br><br>        Plaintiff - <br>        Counter-Defendant - <br>        Appellee, <br><br>   v. <br><br> ARTHUR CLARK, <br><br>        Defendant- <br>        Counter-Claimant - <br>        Appellant/Cross-Appellee, | Bankr. No. 05-38302 <br> Adv. No. 10-01189 <br> Chapter 7 <br><br><br> OPINION[*] |

_____

[*]    This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion.  10th Cir. BAP L.R. 8026-6.

and

JANEL K. BRYAN,

        Defendant -
        Counter-Claimant -
        Appellee/Cross-Appellant,

and

AURORA LOAN SERVICES, LLC and
SPECIALIZED LOAN SERVICING,
LLC,

        Defendants-Appellees,

   and

VECTRA BANK COLORADO, N.A.,

        Defendant.

---

Appeal from the United States Bankruptcy Court
for the District of Colorado

---

Before **KARLIN**, Chief Judge, **CORNISH**, and **MICHAEL**, Bankruptcy Judges.

**MICHAEL**, Bankruptcy Judge.

One of the unwritten rules of bankruptcy practice is this: when you are fighting over a piece of property, convert it into cash. While most property cannot be cut into pieces (how does one dissect a house or a 1957 Chevy?), money is easily divided. Once property has been sold, the parties usually tire of watching their money dwindle as the attorneys' fees mount and reach an agreement as to who gets what. The rule has its exceptions. This case is one of them. Here, the players have been fighting over a parcel of residential real estate for more than ten years. The property was eventually sold, but that failed to move the parties toward a resolution. After much litigation, the bankruptcy court issued orders dividing up the cash. Some of the parties found satisfaction in the bankruptcy court's rulings. The others come to this Court asking us to overrule all or part of the bankruptcy

-2-

court's decision.

We affirm in part, reverse in part, and remand to the bankruptcy court for further proceedings.

## I. Background

### A. *The Players and the Property*

The players in this appeal are Gary Bryan (the "Debtor"), the debtor in the bankruptcy case underlying this appeal, Janel Bryan ("Ms. Bryan"), the Debtor's non-filing spouse (hereafter collectively referred to as the "Bryans"), M. Stephen Peters ("Peters" or the "Trustee"), the trustee in the Debtor's bankruptcy case, and Arthur Clark ("Clark"), a creditor of the Debtor holding a judgment lien. At issue are the net sale proceeds of a residence (the "Residence") sometimes owned and always controlled by the Bryans.

### B. *How We Got Here*

The history of ownership of and encumbrances upon the Residence can best be understood as a game of financial "hot potato." In 2001, the Bryans executed a Deed of Trust on the Residence in favor of Washington Mutual Bank ("WAMU") to secure a $203,000 loan. The Bryans then conveyed the Residence to the Bryan Family Trust (the "Trust"). Over the years, the Bryans transferred the Residence in and out of the Trust on multiple occasions in order to obtain loans using the Residence as collateral. In February 2003, the Trust transferred the Residence back to the Bryans, and the Bryans used the Residence as collateral to refinance the mortgage with WAMU. Once the refinance was completed, the Bryans transferred the Residence back to the Trust. In June 2003, the Trust executed and delivered a Deed of Trust on the Residence to Vectra Bank ("Vectra") as collateral for a $250,000 loan. In January 2005, the Trust transferred the Residence to Ms. Bryan individually, who then obtained a $560,000 loan from Vectra (the "Refinance Loan"). As security for the Refinance Loan, the Bryans executed and delivered to Vectra a joint Deed of Trust on the Residence. Proceeds from the Refinance Loan

-3-

satisfied the existing loans from WAMU and Vectra. The Refinance Loan was ultimately transferred to Aurora Loan Servicing, LLC ("Aurora"). After obtaining the Refinance Loan, Ms. Bryan transferred the Residence back to the Trust.

In May 2005, the Trust transferred the Residence to the Bryans jointly, who used the Residence to secure a home equity line of credit not to exceed $55,000 (the "HELOC") with Vectra. Vectra later assigned its interest in the HELOC to Specialized Loan Servicing, LLC ("Specialized"). Ms. Bryan drew down $53,969 in cash proceeds from the HELOC. The Bryans then transferred the Residence back to the Trust.

At some time prior to 2002, Clark and the Debtor entered into an agreement whereby Clark was to perform environmental remediation services upon property owned by the Debtor. A dispute arose as to the terms of the agreement. In 2002, Clark sued the Debtor in Colorado state court. On June 1, 2004, Clark was awarded a $211,000 judgment against the Debtor. He recorded his judgment in Jefferson County, Colorado, where the Residence was located. When Clark recorded his judgment, the Residence was titled in the name of the Trust.

*C.      The Bankruptcy Case and Related Litigation*

In October 2005, the Debtor filed a Chapter 13 bankruptcy. His case was converted to a Chapter 7 on November 3, 2006. Peters was appointed to serve as trustee in the case. At the time of the bankruptcy filing, the Trust held legal title to the Residence, subject to the Refinance Loan and the HELOC. The Trustee believed that the bankruptcy estate had an interest in the Residence and that there was substantial equity in the Residence for the benefit of creditors.

After the case was converted to Chapter 7, the Residence was sold and two adversary proceedings were filed that are germane to this appeal.[1] The relevant

---

[1]      Clark also brought an adversary objecting to the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(3), (a)(4)(A), and (a)(7). This adversary

(continued...)

litigation may be summarized as follows:

### 1. *The Sham Trust Adversary*

In January 2008, the Trustee filed an adversary proceeding (the "Sham Trust Adversary") against the Bryans and the Trust seeking recovery of assets on behalf of the estate primarily, but not exclusively, from the Trust. The assets sought by the Trustee included the Residence. On June 4, 2009, after a three-day trial, the bankruptcy court issued a memorandum opinion and order concluding that the Trust was an invalid spendthrift trust under Colorado law. The bankruptcy court authorized the Trustee to sell the Residence and to distribute to Ms. Bryan, after payment of debts secured by liens on the Residence, her one-half interest in the proceeds. Ms. Bryan appealed this order to the United States District Court for the District of Colorado (the "District Court"). The District Court affirmed the bankruptcy court's decision. The decision of the bankruptcy court was not further appealed, and the order invalidating the Trust is now final.

### 2. *The Sale of the Residence*

In July 2009, the Trustee requested authorization to employ a broker and sell the Residence. In October 2009, the bankruptcy court issued an order authorizing the Trustee to sell the Residence (the "Sale Order").[2] The Sale Order provided that the Trustee could pay, without further order of the Court, closing costs, the Refinance Loan, the HELOC, and half of the remaining proceeds to Ms. Bryan. In preparing the title work related to the sale of the Residence, the title company discovered Clark's judgment and would not issue title insurance in connection with

---

[1]     (...continued)
proceeding was rendered moot when the Debtor voluntarily waived his discharge. No aspect of that adversary is involved in this appeal.

[2]     Order Granting Trustee's Application to Employ Real Estate Broker; Motion to Sell Real Estate Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C. § 363(F) and (H); and Motion to Pay Administrative Expenses (Including Broker's Commission), *in* Appellant Clark's App. at 1094.

the closing absent entry of an order by the bankruptcy court resolving Clark's judgment lien.

Until his lien was discovered by the title company, no one (including Clark) considered Clark a secured creditor. The Debtor scheduled Clark as an unsecured creditor. Clark filed his proof of claim as an unsecured creditor. Prior to the Sale Order, Clark took no action to assert rights as a secured creditor. Once Clark was reminded of his judgment lien, he took the position that he had a first priority lien on the Residence. The Trustee took the position that Clark had a totally unsecured claim.[3]

In November 2009, the Trustee informed the bankruptcy court of Clark's purported lien in a motion to amend the Sale Order (the "Amended Sale Motion").[4] The Trustee requested entry of an amended sale order directing him to hold any proceeds pending a determination of the validity, priority, and extent of Clark's lien and whether the Trustee could recover a surcharge against the Residence under 11 U.S.C. § 506(c).[5] The bankruptcy court entered an amended order (the "Amended Sale Order") authorizing the Trustee to proceed with the sale and pay the real estate commission and closing costs out of the proceeds.[6] The remaining proceeds of sale were to be held by the Trustee in escrow pending the resolution of the lien priority and surcharge disputes. If the parties were unable to settle their disputes within sixty days, the Amended Sale Order required the Trustee to

---

[3]     *See* Trustee's Motion for Entry of Amended Order Authorizing Sale of Real Estate Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C. § 363(f) at 2 ¶ 12, *in* Appellee Peters's App. at 14 ¶ 12.

[4]     *Id.*, *in* Appellee Peters's App. at 13.

[5]     All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[6]     Amended Order Authorizing Sale of Real Estate Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C. § 363(f), *in* Appellee Peters's App. at 17.

commence an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(2).

The Trustee sold the Residence, generating $851,656.18 in sale proceeds (the "Sale Proceeds"). The parties could not agree on how to divide the Sale Proceeds, and the sixty day time frame established by the Amended Sale Order expired. Thereafter, as required by the Amended Sale Order, the Trustee commenced another adversary proceeding.

### 3.    *The Lien Priority Adversary*

In February 2010, the Trustee initiated an adversary proceeding (the "Lien Priority Adversary") against Clark, Ms. Bryan, Aurora, Specialized, and Vectra to determine the validity, priority, and extent of the various liens against the Residence. He also sought a surcharge against the Sale Proceeds pursuant to § 506(c) for all fees and costs incurred in relation to the Sham Trust Adversary, the sale of the Residence, and the determination of lien priorities. Throughout the litigation, the Trustee took the position that Clark did not hold a valid lien against the Residence.[7]

In December 2011, the bankruptcy court conducted a two-day trial in the Lien Priority Adversary. Specialized did not appear. At the commencement of the trial, the Trustee advised the bankruptcy court that Specialized had assigned the HELOC to the Trustee. No one contested this statement, and the case proceeded to trial. The parties stipulated to the validity of the HELOC and the existence of the HELOC Deed of Trust. Ms. Bryan's testimony in the Sham Trust Adversary that the balance owed on the HELOC was $55,000 was admitted into evidence without objection.

In March 2012, the bankruptcy court entered a memorandum opinion and order (the "Lien Priority Opinion"), ruling that Aurora held a first priority lien and

---

[7]    *See* Joint PreTrial Statement at 1, 3, *in* Appellant Clark's App. at 267, 269.

-7-

the Trustee, by virtue of the assignment of the HELOC from Specialized, held a second priority lien against the Residence. The bankruptcy court concluded that Clark did not hold a valid lien against the Residence and had no interest in the Sale Proceeds.[8] The bankruptcy court ordered the Trustee to distribute $638,195.30 from the Sale Proceeds to Aurora, together with accrued interest through the date of payment and attorney's fees incurred and payable under the Aurora Deed of Trust. After making this payment, the Trustee held $175,066.57 in net Sale Proceeds. Pursuant to the Lien Priority Opinion, Ms. Bryan and the bankruptcy estate were each entitled to $87,533.29, representing fifty percent of the remaining Sale Proceeds.

Clark appealed the Lien Priority Opinion to the District Court, arguing that the bankruptcy court had erred in determining that (1) he did not perfect a valid judgment lien; and (2) the doctrine of marshaling was not applicable. The District Court affirmed the Lien Priority Opinion. Clark further appealed to the United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit"). On December 5, 2013, the Tenth Circuit issued its ruling affirming in part, reversing in part, and remanding the Lien Priority Adversary to the bankruptcy court for further proceedings.[9] The Tenth Circuit agreed with Clark that his judgment was a valid lien against the Residence. Contrary to Clark's position, the Tenth Circuit held that Clark's lien did not attach until the Trust transferred the Residence to the Bryans on May 19, 2005, and was, as a result, junior to the Refinance Loan. The Tenth Circuit remanded the adversary proceeding to the bankruptcy court with instructions to determine lien priority between Clark and the HELOC lien and to consider whether to apply the doctrine of marshaling.

---

[8] As a result of its ruling that Clark did not have a valid lien, the bankruptcy court did not reach Clark's marshaling argument.

[9] *See Clark v. Peters (In re Bryan)*, 547 F. App'x 892 (10th Cir. 2013).

In March 2015, the bankruptcy court issued its opinion on remand (the "Remand Order").[10]  The bankruptcy court found no basis to apply the doctrine of marshaling, because Clark had offered no evidence to support its application and because the "common debtor" requirement for marshaling was not met.  The bankruptcy court concluded that all of the Sale Proceeds were subject to Aurora's lien as a first priority lien.  The remaining balance of the Sale Proceeds were split in half, with one half belonging to the bankruptcy estate and the remaining half belonging to Ms. Bryan.  With respect to the proceeds belonging to the bankruptcy estate, Clark's lien was found to be in second position, followed by the HELOC.  As to Ms. Bryan's portion of the Sale Proceeds, the HELOC was in second position behind Aurora's lien.

The Court also ruled that the estate's share of the Sale Proceeds was subject to a surcharge under § 506(c) for the reasonable fees and expenses incurred by the Trustee in the Sham Trust Adversary, the sale of the Residence, and the Lien Priority Adversary.  The Trustee provided the following itemization of his fees and costs for the period ending December 11, 2011.[11]

| | |
|---|---|
| Fees related to the Sham Trust Adversary: | $45,084.00[12] |
| Fees related to the sale of the Residence: | $4,932.50 |
| Fees related to the Lien Priority Adversary: | $12,845.00 |
| Total fees: | $62,861.50 |

---

[10]    Findings of Fact, Conclusions of Law, and Order Re: Validity, Extent and Priority of Lien Claims on Remand from Tenth Circuit Court of Appeals, *in* Appellant Clark's App. at 717-37.

[11]    Explanation and Summary of Sender & Wasserman Billing Records, *in* Appellant Clark's App. at 1097.  December 11, 2011, is the date immediately preceding the trial of the Lien Priority Adversary.

[12]    The Sham Trust Adversary fees may be further broken down into $33,624 in fees relating to the trial, and $11,820 in fees incurred with respect to the subsequent appeal.

Total costs prior to December 11, 2011:                    $3,177.04[13]

**Total fees and costs prior to December 11, 2011:          $66,038.54**

The Remand Order awarded the Trustee $62,861.50 in fees and $2,949.34 in costs pursuant to § 506(c).[14] Although the bankruptcy court referred to the award as "the bankruptcy estate's fees and expenses attributable to the recovery and liquidation of the [Residence]," it addressed all of the fees and costs requested by the Trustee.[15]

In the Remand Order, the bankruptcy court also allowed the Trustee to submit an affidavit detailing the additional fees and costs incurred during and after December 11, 2011. The Trustee timely submitted his affidavit requesting an additional $30,950 in fees and $126.89 in costs, all of which related to the Lien Priority Adversary and the appeals related thereto.[16] The bankruptcy court provided Clark with an opportunity to object to the additional fees and costs, which he did.[17] In his objection, Clark claimed that all fees and costs related to the Lien Priority Adversary should be disallowed because they conferred no benefit upon him, the hourly rate charged by Trustee was excessive, and their allowance would eliminate any significant distribution on behalf of Clark's claim. After considering the affidavit and the objection, the bankruptcy court issued an oral bench ruling awarding the Trustee an additional $20,250 in fees and $126.89 in costs on

---

[13]     These costs were not allocated to specific categories.

[14]     The cost award was slightly less than the amount requested by the Trustee. No explanation was given for this difference.

[15]     Remand Order at 20, *in* Appellant Clark's App. at 736.

[16]     Affidavit of Attorneys Fees and Costs, *in* Appellant Clark's App. at 740.

[17]     Objection to Affidavit of Attorney's Fees and Costs, *in* Appellant Clark's App. at 747.

May 4, 2015.[18]  We have not been provided with a transcript of this ruling, so we are not in a position to explain or review the bankruptcy court's findings or conclusions.

The bankruptcy court then issued its order regarding distribution of Sale Proceeds (the "Final Distribution Order").[19]  The bankruptcy court allowed the Trustee a total surcharge of $86,187.73 (the "Surcharge").[20]  After reducing the estate's share of the Sale Proceeds by the amount of the Surcharge, the Trustee was left with $1,345.56 to distribute to Clark.  In the Final Distribution Order, the bankruptcy court calculated the amount due under the HELOC lien to be $74,972.91, and awarded that amount to the bankruptcy estate as the holder of the HELOC. The balance of $12,560.38 in Sale Proceeds attributable to Ms. Bryan's interest in the Residence was awarded to Ms. Bryan.

Clark filed a timely appeal, arguing that the bankruptcy court erred when it failed to apply the doctrine of marshaling and granted the Trustee's request for a surcharge of the Sale Proceeds of the Residence pursuant to § 506(c).  Ms. Bryan filed a cross-appeal, arguing that the bankruptcy court erred when it determined the amount owed under the HELOC and authorized the Trustee to retain the monies necessary to satisfy the HELOC.

## II.    Standard of Review

Our review of bankruptcy court decisions is traditionally divided into three categories: (1) questions of law, which we review *de novo*; (2) questions of fact, which we review for clear error; and, (3) matters of discretion, which are

---

[18]     Minutes of Electronically Recorded Proceeding, *Peters v. Bryan, et. al. (In re Bryan),* Ch 7 Case No. 05-38302-SBB, Adv. Proc. No. 10-01189-SBB (Bankr. D. Colo. May 4, 2015) (Adv. ECF No. 206), *in* Appellant Clark's App. at 1121.

[19]     Final Order Regarding Distribution of Net Sale Proceeds *in* Appellant Clark's App. at 755.

[20]     *Id.* at 3, *in* Appellant Clark's App. at 757.

reviewable for abuse of discretion.[21]  *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[22]  A factual finding is "clearly erroneous" when "it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made."[23]  Under the abuse of discretion standard "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[24]

## III.   Discussion

### A.   *The bankruptcy court correctly refused to apply the doctrine of marshaling.*

Marshaling of assets is an equitable doctrine resting "upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds."[25]  Under Colorado law, in order to invoke the doctrine of marshaling, three elements must be established: (1) two creditors of the same debtor (i.e., the common debtor requirement); (2) two funds or properties belonging to that debtor; and (3) one creditor has a claim or lien on both funds while the other creditor has a claim or

---

[21]   *Pierce v. Underwood*, 487 U.S. 552, 558 (1988); *Fowler Bros. v. Young* (*In re Young*), 91 F.3d 1367, 1370 (10th Cir. 1996).

[22]   *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).

[23]   *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *LeMaire By and Through LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987)).

[24]   *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991 (quoting *United States v. Ortiz*, 804 F.2d 1161, 1163 (10th Cir. 1986)).

[25]   *Meyer v. United States*, 375 U.S. 233, 236 (1963) (quoting *Sowell v. Fed. Reserve Bank of Dallas, Tex.*, 268 U.S. 449, 454-57 (1925)).

lien on only one of the funds.[26] The "application of equitable doctrines rests in the sound discretion of the [trial] court; absent a showing of abuse of discretion, the [trial] court's exercise thereof will not be disturbed[.]"[27]

Clark argues that the doctrine of marshaling should have been applied to require Aurora to first look to Ms. Bryan's share of the Sale Proceeds before recovering from the estate's share. Clark describes this as a mere "accounting exercise" that would result in a significant increase in Clark's recovery. As to that point, Clark is correct. What Clark fails to mention is that his proposed "accounting exercise" would result in no distribution to the holder of the HELOC.

The bankruptcy court correctly concluded that the three elements required for application of the doctrine of marshaling are not present in this case. In the Remand Order, the bankruptcy court found that the common debtor requirement for marshaling was not met because only Ms. Bryan was personally liable on the Refinance Loan. In his brief, Clark states that "[b]oth Aurora and Mr. Clark share a common debtor, the Debtor Mr. Bryan."[28] The statement is incorrect. The Debtor is not a common debtor of Aurora and Clark.

Clark contends that Colorado law supports application of the doctrine of marshaling in this case. He relies upon *Legge v. Peterson*, a 1929 decision of the

---

[26]     *Legge v. Peterson*, 277 P. 786, 788 (Colo. 1929) (hereafter "*Legge*").

[27]     *McKinney v. Gannett Co.*, 817 F.2d 659, 670 (10th Cir. 1987). *See also In re Carson*, 374 B.R. 247, 249 (10th Cir. BAP 2007) (citing *In re Laufenberg*, No. KS-05-053, 2004 WL 2731670, at *4 (10th Cir. BAP Nov. 30, 2004)) (failure to apply doctrine of marshaling was not error). Clark argues that, because the bankruptcy court determined that the doctrine of marshaling did not apply as a matter of law to the facts of this case, we should review the decision *de novo*. As explained *infra*, we conclude that the bankruptcy court was correct in its application of Colorado law to the facts of this case. Were we to accept Clark's argument and apply a *de novo* standard of review, the result would be the same.

[28]     Appellant Clark's Br. 14.

Colorado Supreme Court.[29]  Clark cites to the following portion of *Legge*:

> "It has been held that, where one creditor holds a claim against two joint debtors, and another creditor holds a claim against one of those two, equity will not, for the sake of the creditor who has the single claim, compel the other creditor to proceed against that one of his joint debtors against whom he has no claim; ***but that it may do so when it is equitable as between the two debtors that it should be done.***" . . . The law, as above quoted from Corpus Juris, finds support and approval in Story's Equity Jurisprudence (14th Ed.) vol. 2, p. 246, § 867, and 18 R. C. L. 460, par. 9.[30]

While the quote is accurate, it must be taken in context.  The quote is not reflective of the ruling in *Legge*.  It is a mere recital of authority contained in a treatise.  In *Legge*, the trial court refused to apply the doctrine of marshaling.  On appeal, the Colorado Supreme Court affirmed because two of the elements of marshaling were not present:

> The evidence in this case does not disclose that the bank and the plaintiff are creditors of the same debtor, but it does disclose that the plaintiff is the creditor of the judgment debtor alone, and that the bank is the creditor of both the judgment debtor and the lessee. The evidence in this case does not disclose two funds belonging to the common debtor, but it does disclose that there are two debtors jointly interested in one fund, and a separate fund, i.e., the cattle, farm animals, and equipment, in which only one of the debtors, the lessee, is interested. It will thus be readily seen that at least two of the necessary requisites to marshaling are lacking, and therefore marshaling by subrogation was properly denied.[31]

*Legge* does not stand for the principle that the elements of marshaling need not be present in order to apply the doctrine.  To the contrary, the court in *Legge* refused to apply the doctrine because all necessary elements were not present.  The Colorado Court of Appeals reached the same conclusion some fifty years after *Legge*.[32]  When a bankruptcy court applies Colorado state law on an issue governed

---

[29]     *Legge*, 277 P. 786.

[30]     Appellant Clark's Reply Br. 8 (quoting *Legge*, 277 P. at 788-89 (emphasis added by Appellant Clark)).

[31]     *Legge*, 277 P. at 789.

[32]     *W. Nat'l Bank of Casper v. ABC Drilling Co.*, 599 P.2d 942, 946 (Colo.

(continued...)

-14-

by Colorado state law, it does not commit error.

Clark argues that the bankruptcy court should have ignored the ruling in *Legge* and, instead, followed a decision of the United States Bankruptcy Court for the District of Minnesota, *In re Bame* ("*Bame*").[33] We disagree. *Bame* is not controlling law in the Tenth Circuit or in the District of Colorado. It did not seek to apply Colorado law to its facts. Moreover, in the fourteen years since *Bame* was decided, only one court chose to rely upon its analysis, and then only to support denial of a motion to dismiss a complaint based upon marshaling at the pleading stage.[34] The bankruptcy court acted within its discretion in following *Legge* and ignoring *Bame*.

B.      *The bankruptcy court erred in allowing part of the Surcharge.*

As a general rule, the expenses of administration in a Chapter 7 case may not be surcharged against secured collateral.[35] "This 'traditional' rule is based on the fact that the trustee acts on the authority of the court and for the interest of the general creditors, not on the authority of the secured creditors and for their particular interests."[36] Section 506(c) provides an exception to the general rule.[37]

---

(...continued)
App. 1979) ("Before the doctrine of marshaling assets is applicable there must be a common debtor of the two creditors." (reversing decision of trial court that applied marshaling in the absence of a common debtor)).

[33]      *Ramette v. United States (In re Bame)*, 271 B.R. 354 (Bankr. D. Minn. 2001), *aff'd*, 279 B.R. 833 (8th Cir. BAP 2002).

[34]      *Houghton v. United States (In re Szwyd)*, 394 B.R. 230, 241 (Bankr. D. Mass. 2008), *aff'd*, 408 B.R. 547 (D. Mass. 2009).

[35]      *In re Domistyle, Inc.*, 811 F.3d 691, 695 (5th Cir. 2015); *In re Visual Indus., Inc.*, 57 F.3d 321, 324 (3d Cir. 1995) (hereafter "*Visual Industries*"); *Weinman v. City of Pueblo (In re Adam Aircraft Indus., Inc.)*, 527 B.R. 709, 715 (D. Colo. 2014) ("Ordinarily, the costs and expenses detailed in Section 506(c) are paid from the unencumbered assets of a bankruptcy estate rather than from secured collateral.") (quoting *In re Smith Int'l Enters. Inc.*, 325 B.R. 450, 453 (Bankr. M.D. Fla. 2005)).

[36]      *In re Swann*, 149 B.R. 137, 143 (Bankr. D.S.D. 1993) (citing *In re*

(continued...)

It states that:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.[38]

A surcharge pursuant to § 506(c) "is an assessment against a secured party's collateral as reimbursement for a particular benefit to such a secured creditor."[39] The Trustee bears the burden of proving "(1) the expenditure was necessary, (2) the amounts expended were reasonable, and (3) the creditor benefited from the expenses."[40] The benefit to the secured creditor must be "concrete" and "quantifiable."[41] We review a bankruptcy court's factual findings as to the necessary, reasonable, and benefit requirements of § 506(c) under the clearly erroneous standard.[42] We review the bankruptcy court's application of the correct legal standard contained in § 506(c) *de novo*.[43]

---

[36] (...continued)
*Saybrook MFG. Co.*, 130 B.R. 1013, 1021 (Bankr. M.D. Ga. 1991)).

[37] *Domistyle*, 811 F.3d at 695 ("Section 506(c) provides a 'narrow' and 'extraordinary' exception to this general rule."); *In re Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir. 1982) (hereafter "*Trim-X*"); *Adam Aircraft Indus., Inc.*, 527 B.R. at 715; *Swann*, 149 B.R. at 143.

[38] § 506(c).

[39] *In re InteliQuest Media Corp.*, 326 B.R. 825, 832 (10th Cir. BAP 2005).

[40] *Domistyle,* 811 F.3d at 695 (quoting *In re Delta Towers, Ltd.*, 924 F.2d. 74, 76 (5th Cir. 1991)). *See also Trim-X*, 695 F.2d at 299; *Visual Industries*, 57 F.3d at 325 (expenditures must "provide a *direct* benefit to the secured creditors"); *Swann*, 149 B.R. at 143.

[41] *In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061, 1068 (9th Cir. 2001) ("a party seeking a surcharge faces an *onerous burden of proof*") (emphasis added); *Adam Aircraft Indus., Inc.*, 527 B.R. at 715 (same).

[42] *Domistyle*, 811 F.3d at 695; *Trim-X,*, 695 F.2d at 299 n.4. *See also In re Miniscribe Corp.*, 309 F.3d 1234, 1240 (10th Cir. 2002).

[43] *Domistyle,* 811 F.3d at 695; *Visual Industries*, 57 F.3d at 324. *See also*

Clark argues that the bankruptcy court erred in awarding the Surcharge. Clark contends that the fees and costs that constitute the Surcharge were largely unnecessary and failed to benefit Clark in his status as a secured creditor. The Trustee responds that all of the fees and costs encompassed in the Surcharge represent reasonable and necessary efforts to liquidate the Residence and determine who was properly entitled to the Sale Proceeds.

The fees and costs that comprise the Surcharge fall into three separate categories: those relating to the Sham Trust Adversary, those relating to the sale of the Residence, and those relating to the Lien Priority Adversary. Clark has focused upon the fees and costs relating to the Lien Priority Adversary. In order to assist the parties and any other court called upon to review the bankruptcy court's decision, we will examine all aspects of the Surcharge.

### i. Fees and Costs Relating to the Sham Trust Adversary

In his brief and at oral argument, counsel for Clark conceded that the portion of the Surcharge relating to the Sham Trust Adversary was beneficial and at least "arguably necessary."[44] The bankruptcy court found that the fees and costs were necessary, noting the Trustee's duty under § 704 to investigate claims and locate assets. Had the Trustee not litigated the Sham Trust Adversary, the estate would have neither recovered nor sold the Residence. The bankruptcy court concluded that "the Trustee's efforts here were necessary because the Trustee acted to preserve and liquidate an estate asset that appeared to all, including Mr. Clark, to possess significant equity."[45] In addition, as the bankruptcy court noted, at the time the Trustee commenced the Sham Trust Adversary, Clark took the position

(...continued)
*Miniscribe Corp.*, 309 F.3d at 1240.

[44]    Appellant Clark's Br. 22.

[45]    Remand Order at 19, *in* Appellant Clark's App. at 735.

that he was an unsecured creditor. Clark benefited from the Trustee's actions because success in the Sham Trust Adversary was the primary if not exclusive means for Clark to obtain any recovery from the Residence. The bankruptcy court also found that these fees and costs were reasonable, noting that no one (including Clark) presented any evidence at trial to the contrary. We find no error in these conclusions.

### ii. Fees and Costs Relating to the Sale of the Residence

Clark takes the position that all fees and costs incurred by Trustee after the conclusion of the Sham Trust Adversary were unnecessary and of no benefit to him.[46] This includes the $4,932.50 in attorney's fees related to the sale of the Residence. Clark ignores the fact that, at the time the Trustee undertook his sales efforts, all parties were unaware of Clark's lien and there appeared to be significant equity in the Residence. The Trustee took a presumably valuable but illiquid asset and converted it into cash, conferring a direct benefit to all parties claiming an interest in the Residence.[47] The Trustee's actions were both sound and necessary. There is no dispute regarding the reasonableness of the fees or costs incurred.[48] The bankruptcy court correctly applied § 506(c) and did not abuse its discretion in awarding that portion of the Surcharge relating to the sale of the Residence.

---

[46]     Appellant Clark's Br. 13, 19, 20.

[47]     *Visual Industries*, 57 F.3d at 325 ("The rule understandably shifts to the secured party, who has benefited from the claimant's expenditure, the *costs of preserving or disposing of the secured party's collateral*, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate, providing that such unencumbered assets exist.") (emphasis added).

[48]     Although Clark raised the issue of the hourly rate charged by the Trustee's counsel before the bankruptcy court, he did not brief the issue on appeal. As a result, we deem the issue abandoned. *See Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1277-78 (10th Cir. 1994) (issue not briefed in opening brief is deemed abandoned on appeal).

### iii. *Fees and Costs Relating to the Lien Priority Adversary*

Clark contends that the bankruptcy court erred in determining that the portion of the Surcharge related to the Lien Priority Adversary was necessary. He argues that any actions by the Trustee following the Sham Trust Adversary were unjustified, as the Trustee's obligations to recover property of the estate had been fulfilled. Clark posits that the parties claiming an interest in the Residence were free to dispute the validity and priority of their liens, and it was not necessary for the Trustee to initiate the Lien Priority Adversary. We do not agree.

The Amended Sale Order ordered the Trustee to initiate the Lien Priority Adversary if the parties were unable to voluntarily resolve the lien priority dispute. Clark did not appeal the Amended Sale Order. Both Clark and Trustee were bound by its terms. Clark cannot now be heard to argue that the Trustee's compliance with that order was "unnecessary." In addition, the bankruptcy court made several findings regarding the necessity of the Trustee's actions to preserve and liquidate a valuable estate asset, which included the filing of the Lien Priority Adversary to determine, among other things, whether Clark had a valid lien on the Residence. We cannot say that these findings are clearly erroneous.

For the reasons discussed *supra*, the Court considers the issue of the reasonableness of the Trustee's attorney's fees waived.[49] We also find the bankruptcy court's finding regarding the reasonableness of the Trustee's fees and costs in the Lien Priority Adversary was not clearly erroneous. The real question is not whether these fees and costs are reasonable. It is whether they should be borne by the bankruptcy estate or surcharged against the Sale Proceeds to Clark's detriment.

The remaining issue under § 506(c) is whether the Trustee's efforts in conducting the Lien Priority Adversary benefited Clark. Clark argues that

---

[49] *See id.*

-19-

throughout the Lien Priority Adversary the Trustee maintained an adverse position to Clark, insisting that he did not have a valid lien against the Residence.[50] He is correct. The Trustee's role in the Lien Priority Adversary was not limited to the ministerial task of sorting out priorities among the various secured creditors. Instead, the Trustee actively objected to Clark's status as a secured creditor, in the hopes of acquiring the remaining equity in the Residence for all general unsecured creditors. Indeed, had the Trustee chosen to concede the existence of Clark's lien, the bankruptcy estate could not have benefited from the Lien Priority Adversary. While this litigation provided a potential benefit to the class of general unsecured creditors, we are unable to see how the Trustee's actions in contesting the validity of Clark's lien provided any benefit to the secured collateral or to Clark.

The Trustee argues that because the Lien Priority Adversary was *necessary*, i.e., the parties refused to settle their priority dispute, it benefited Clark by bringing resolution to the matter. This ignores the fact that throughout the Lien Priority Adversary and its appeal, the Trustee actively sought to deny Clark's status as a secured creditor.[51] Far from being incurred "primarily to preserve or dispose of encumbered property," the Lien Priority Adversary expenses were incurred in large part to contest the validity of Clark's lien, with the sorting of priority among Clark, Aurora, and Ms. Bryan an incidental by-product.[52] The fact that Clark was eventually found to have a valid lien by the Tenth Circuit does not suggest that the Trustee's time spent fighting that position provided a quantifiable benefit to Clark or to the secured collateral.

---

[50]    Appellant Clark's Br. 10 ¶ 14.

[51]    Although the Trustee stipulated to the validity of Clark's lien on the eve of the trial of the Lien Priority Adversary before the bankruptcy court, he acknowledges that he "defended" that court's ruling in the appeals before the District Court and Tenth Circuit. *See* Proposed Findings of Fact and Conclusions of Law at 11, *in* Appellant Clark's App. at 705; Appellee Peters's Br. 6.

[52]    *In re Domistyle*, 811 F.3d 691, 698 (5th Cir. 2015).

Some courts have suggested an alternative to the "benefit" element of § 506(c) exists where a secured creditor *caused* or *consented* to the incurred expenses.[53] The Trustee argues that Clark impliedly consented to the expenses incurred in the Lien Priority Adversary because he did not resolve his priority dispute with the other secured parties, or object to the filing of the complaint as contemplated by the Amended Sale Order. The Court is not persuaded. The fact that Clark understood that the Lien Priority Adversary was a necessary part of the Trustee's administrative duties, and did not object to its filing, does not equate to consent to fund such litigation. Nor should § 506(c) be used to saddle a party that refuses to compromise in litigation with general administrative expenses otherwise paid by the estate.

The Trustee suggests that Clark caused all of the expenses incurred in the Lien Priority Adversary, pointing to: (1) the eleventh hour assertion of Clark's lien interest; and (2) Clark's insistence that his lien was in first position. This argument does not withstand scrutiny. Clark's lien was discovered prior to the initiation of the Lien Priority Adversary. Although the Trustee argues that he would have made different choices regarding administration of the estate had he known about Clark's lien sooner, he does not explain why the "lateness" of the discovery affected his litigation choices going forward.

In support of his arguments regarding consent and causation, the Trustee relies on *In re Trim-X, Inc.*, a 1982 decision of the United States Court of Appeals for the Seventh Circuit.[54] We do not read *Trim-X* as broadly as the Trustee. The facts in *Trim-X* are quite narrow. The expenses at issue in that case related to the

---

[53]     *Trim-X,* 695 F.2d at 301; *In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061, 1068 (9th Cir. 2001) ("Debtor's counsel should receive the payment to the extent of the benefit provided or, in this case, to the extent agreed to by the secured creditor."); *In re Swann*, 149 B.R. 137, 143 (Bankr. D.S.D. 1993).

[54]     *Trim-X*, 695 F.2d 296.

direct preservation of collateral (namely, storage and security charges) from the date of a trustee's appointment until the date the collateral was abandoned. Ultimately, the only expenses surcharged were those related to the time period between the date the trustee sought to abandon the collateral and the date the order of abandonment was entered.[55] The court in *Trim-X* found that the expenses incurred in that interim period were caused by the creditor's failure to respond to the request for abandonment, and surcharged the collateral for those expenses. The bankruptcy estate was forced to bear the expense of preserving the collateral prior to the decision to abandon. The surcharge of collateral for the costs of its preservation is a far cry from charging a lien holder with the expense of attacking the validity and priority of its lien.[56]

The Trustee also states that Clark's insistence on a first priority position for his lien caused the expenses related to the Lien Priority Adversary.[57] The Trustee's argument suggests that a party who takes a position adverse to a trustee can be said to "cause" the corresponding legal expenses incurred by the estate, even when that party prevails. Were that the case, *any* creditor who had the temerity to take issue with a bankruptcy trustee's assessment of the validity of the creditor's lien status would be at risk of funding the litigation against itself, even if it won the argument.

Both the Trustee and the bankruptcy court suggest that the Surcharge is required to prevent Clark from "obtain[ing] a windfall at the expense of the

---

[55] *Id.* at 301.

[56] The cases cited in *Trim-X* are equally narrow. *See In re Tyne*, 257 F.2d 310 (7th Cir. 1958) (storage charges); *Equitable Loan & Sec. Co. v. R.L. Moss & Co.*, 125 F. 609 (5th Cir. 1903) (taxes and insurance premiums); *In re Hotel Assocs., Inc.*, 6 B.R. 108, 112 (Bankr. E.D. Pa. 1980) (creditor held to have consented to payment of expenses incurred by Chapter 11 trustee appointed upon motion of the creditor). None of the facts of these cases even remotely resemble the facts of this case.

[57] *See* Appellee Peter's Br. 47 ("The Lien Priority Adversary was required as a result of Mr. Clark's decision to assert this position.").

bankruptcy estate."[58]  The bankruptcy court cites *In re Visual Industries, Inc.*, a decision of the Court of Appeals for the Third Circuit, as support for this position.[59]  The court in *Visual Industries* focused specifically on the expenses of preserving and disposing of a secured party's collateral, and whether those expenses provided a *direct* benefit, as opposed to merely *some* benefit, to the surcharged collateral.[60]  While that case may provide support for the bankruptcy court's decision to surcharge the Sale Proceeds for fees and costs related to the Sham Trust Adversary and the sale of the Residence, it does not speak to issues of cause or consent where there is no direct benefit to the secured creditor.

This Court concludes that the portion of the Surcharge related to the Lien Priority Adversary does not fulfill the requirements of § 506(c).  Although the fees and costs related to the Lien Priority Adversary were necessary and reasonable expenses for the Trustee to incur on behalf of the estate, there was no evidence or facts presented to show a concrete and quantifiable benefit to the secured collateral or to Clark as a secured creditor.  Therefore, to the extent the bankruptcy court based the Surcharge upon a finding that the Lien Priority Adversary benefited Clark for purposes of § 506(c), it was error to do so.

The bankruptcy court's decision with respect to the Surcharge is affirmed in

---

[58]     Remand Order at 20, *in* Appellant Clark's App. at 736 ("Given Mr. Clark's efforts of the past four years to obtain a windfall at the expense of the bankruptcy estate, Aurora, and Ms. Bryan, . . . the Court finds sufficient grounds exist to allow the Trustee to recover the full amount of the proceeds subject to the Clark Lien pursuant to § 506(c).").

[59]     *See id.* at 19, in Appellant Clark's App. at 735 (citing *Visual Industries*, 57 F.3d 321 (3d Cir. 1995)).  The court in *Visual Industries* addressed the question of whether § 506(c) authorized payment to trade creditors whose provision of materials helped sustain a debtor's operations, but did not directly benefit a secured creditor's property. The court held that direct benefit to a secured creditor must be shown.

[60]     *Visual Industries*, 57 F.3d at 325, 327 ("Merely providing *some* benefit to the debtor . . . does not satisfy § 506(c)'s requirement that the claimant in order to prevail must provide a direct benefit inuring to the secured lender for the preservation or disposition of the secured property.").

part and reversed in part.  To the extent the Surcharge represents fees incurred in the Sham Trust Adversary and the sale of the Residence, the decision is affirmed. Those fees total $50,016.50.  To the extent the Surcharge represents fees incurred with respect to the Lien Priority Adversary, the decision of the bankruptcy court is reversed.  Those fees, which total $43,795, may not be surcharged against the Sale Proceeds.[61]

On the issue of costs, the record before us does not establish which specific costs related to the Sham Trust Adversary, the sale of the Residence, or the Lien Priority Adversary.  We therefore remand this case to the bankruptcy court for the limited purpose of determining which costs awarded by the bankruptcy court and incurred prior to December 11, 2011, related to each of these three categories.[62]  To the extent the expenses relate to the Sham Trust Adversary and the sale of the Residence, they are the proper subject of surcharge.  To the extent the expenses relate to the Lien Priority Adversary, they may not be surcharged against the Sale Proceeds.[63]

C.    *The bankruptcy court did not err in determining that the bankruptcy estate was entitled to retain the Sale Proceeds subject to the HELOC lien.*

---

[61]    Clark asks us to remand the decision to the bankruptcy court for a determination as to what fees benefited him and are thus the proper subject of surcharge.  With the exception of costs, we decline to do so.  The record before us supports our decision to reverse the bankruptcy court's decision to include the fees incurred in the Lien Priority Adversary as part of the Surcharge.  There is no need for remand of that issue.

[62]    These costs were $2,949.34.  *See* Final Distribution Order at 3 ¶ 7, *in* Appellant Clark's App. at 757.  On the record before us, the only costs clearly attributable to the Lien Priority Adversary are the $126.89 in costs incurred after December 11, 2011, awarded in the Final Distribution Order.  *Id.*  The latter may not be surcharged against the Sale Proceeds.

[63]    We are not suggesting that the Trustee should not be paid the fees and costs incurred in the Lien Priority Adversary. Those administrative expenses may be eligible to be paid in the same fashion as any other Chapter 7 administrative expense.  Whether these expenses are allowable as an administrative expense is not before us.  Our holding is limited to the decision that fees and expenses incurred by the Trustee in the Lien Priority Adversary do not meet the criteria for a surcharge under § 506(c).

-24-

Ms. Bryan contends the bankruptcy court's finding that the estate was the holder of the HELOC was clearly erroneous. She argues that, because of Specialized's failure to participate in the trial of the Lien Priority Adversary and an insufficient factual basis to support the bankruptcy court's finding that Specialized assigned the HELOC to the Trustee, the HELOC no longer constitutes a valid lien against the Sale Proceeds. The Trustee argues Ms. Bryan lacks standing to challenge the bankruptcy court's determination regarding entitlement to the Sale Proceeds subject to the HELOC. He further argues that, regardless of standing, the bankruptcy court had before it a sufficient factual basis to determine that the estate was the holder of the HELOC.

With respect to the issue of standing, we have held only a "person aggrieved" by a bankruptcy court order may appeal.[64] A person aggrieved is "one 'whose rights or interests are directly and adversely affected pecuniarily by the decree or order of the bankruptcy court.'"[65] A party has standing when a bankruptcy court order "'diminishes their property, increases their burdens, or impairs their rights.'"[66] Ms. Bryan is not a "person aggrieved" with respect to the Final Distribution Order. The issue of entitlement to the HELOC's share of the Sale Proceeds is between Specialized and the Trustee. The bankruptcy court's determination that the estate is the holder of the HELOC neither diminishes Ms. Bryan's property nor impairs her rights. It was uncontested at trial of the Lien Priority Adversary that the HELOC constituted a valid lien against the Sale Proceeds. The HELOC lien is superior to Ms. Bryan's interest in the Sale

---

[64] *In re Petroleum Prod. Mgmt., Inc.*, 282 B.R. 9, 13–14 (10th Cir. BAP 2002).

[65] *Id.* at 14 (quoting *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1500 (10th Cir.), cert. denied, 513 U.S. 818 (1994)).

[66] *Id.* (citing *In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1500 (10th Cir. 1994) quoting *GMAC v. Dykes (In re Dykes)*, 10 F.3d 184, 187 (3d Cir. 1993)).

Proceeds, regardless of who holds it. Whether the recipient is the bankruptcy estate, Specialized, or another assignee, the distribution will have no economic impact on Ms. Bryan. Accordingly, Ms. Bryan does not have standing to appeal this issue.

Even if Ms. Bryan had standing to contest the estate's interest in the HELOC, there was a factual basis for the bankruptcy court's determination that the HELOC was valid and the estate was the proper holder of the HELOC. Until this cross-appeal, Ms. Bryan stipulated to and never challenged the validity of the HELOC. The Trustee represented to the bankruptcy court he had reached an agreement with Specialized in which the HELOC was assigned to the bankruptcy estate. No party, including Specialized and Ms. Bryan, challenged this representation at trial. Specialized was served with the complaint and summons in the Lien Priority Adversary. Specialized filed its answer and submitted its list of witnesses and exhibits. Specialized participated in the proceedings and had an opportunity to challenge any inaccurate representations. Accordingly, the bankruptcy court's findings regarding the assignment from Specialized to the bankruptcy estate are not clearly erroneous.

In reviewing whether the bankruptcy court made erroneous factual findings as to the validity, priority, and extent of the HELOC lien, we examine whether there is sufficient factual support in the record for the bankruptcy court's findings. With respect to the validity of the HELOC lien, the parties stipulated to the existence of the HELOC lien before the trial.[67] On remand, the bankruptcy court found that "[t]he parties all concede the validity of the lien interests asserted by Aurora, Specialized and Mr. Clark."[68] No party, including Ms. Bryan, disputed the validity of the HELOC lien prior to the filing of this appeal.

---

[67]     Remand Order at 6 n.37, *in* Appellant Clark's App. at 722.

[68]     *Id.* at 13, *in* Appellant Clark's App. at 729.

D.    *The bankruptcy court did not err in determining the amount due under the HELOC.*

Ms. Bryan next contends the bankruptcy court made erroneous factual findings regarding the amount due under the HELOC. The Trustee argues there was ample evidence in the record to support the bankruptcy court's findings. We agree with the Trustee.

The record contains ample evidence to support the bankruptcy court's factual determination of the amount owed on the HELOC. First, the bankruptcy court previously determined the outstanding balance on the HELOC as of the date of the Sham Trust Adversary. This finding was not contested or appealed. Second, the HELOC Deed of Trust, which stated the interest rate of the HELOC, was offered and admitted into evidence at trial of the Lien Priority Adversary. Finally, all parties to the Lien Priority Adversary, including Ms. Bryan, stipulated to the admittance of Ms. Bryan's testimony from the trial of the Sham Trust Adversary that established the amount owed on the Deed of Trust. As there was no evidence that any payments had been made on the HELOC after the commencement of the Sham Trust Adversary, calculating the balance due on the HELOC was a matter of simple arithmetic.[69] The bankruptcy court's factual findings regarding the validity and priority of the HELOC lien, and the amount outstanding under the HELOC, were not clearly erroneous.

## IV.    Conclusion

The bankruptcy court decision is affirmed in part and reversed in part. We reverse the decision of the bankruptcy court to the extent it determined that the

---

[69]    The Residence was sold in December 2009. The bankruptcy court calculated two years of interest from 2009-2011 equaling $7,425. The bankruptcy court then determined that as of December 2011 the amount due under the HELOC was $62,425, with interest continuing to accrue at the per diem rate of $10.17. The bankruptcy court then calculated interest from December 15, 2011, through April 30, 2015 totaling $12,547.91 and concluded, as of April 30, 2015, the total amount due on the HELOC was is $74,972.91. Final Distribution Order at 3, *in* Appellant Clark's App. at 757.

Trustee's fees and costs incurred in the Lien Priority Adversary are the proper subject of a surcharge under § 506(c). We remand this case to the bankruptcy court for the limited purpose of determining which costs incurred by the Trustee prior to December 11, 2011, related to the Sham Trust Adversary, the sale of the Residence, and the Lien Priority Adversary, with instructions that to the extent the costs relate to the Sham Trust Adversary and the sale of the Residence, they are the proper subject of a surcharge, and, to the extent the costs relate to the Lien Priority Adversary, they may not be surcharged against the Sale Proceeds. In all other respects, the decision of the bankruptcy court is affirmed.